## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTH DIVISION

| | |
|---|---|
| **BOBBY J. GOLDEN** | **PLAINTIFF** |
| **VERSUS** | **CASE NO.: <u>1:06cv1006LG-JMR</u>** |
| **HARRISON COUNTY, MISSISSIPPI;** | **DEFENDANTS** |
| **SHERIFF GEORGE PAYNE, OFFICIALLY** | |
| **AND IN HIS INDIVIDUAL CAPACITY;** | |
| **LEE OTIS JACKSON, OFFICIALLY AND** | |
| **IN HIS INDIVIDUAL CAPACITY; MAJOR** | |
| **DIANNE GASTON-RILEY, OFFICIALLY** | |
| **AND IN HER INDIVIDUAL CAPACITY;** | |
| **CAPTAIN RICK GASTON, BOOKING** | |
| **SUPERVISOR, OFFICIALLY AND IN HIS** | |
| **INDIVIDUAL CAPACITY; CAPTAIN** | |
| **PHILLIP TAYLOR, OFFICIALLY AND IN** | |
| **HIS INDIVIDUAL CAPACITY; JOHN DOES** | |
| **1-5, OFFICIALLY AND IN THEIR INDIVIDUAL** | |
| **CAPACITY** | |

### PLAINTIFF BOBBY J. GOLDEN'S MEMORANDUM OF AUTHORITIES IN OPPOSITION OF MOTION FOR QUALIFIED IMMUNITY AND SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS, SHERIFF GEORGE PAYNE, DIANNE GASTON-RILEY, PHIL TAYLOR, AND LEE <u>OTIS JACKSON OFFICIALLY AND IN THEIR INDIVIDUAL CAPACITIES</u>

**COMES NOW,** plaintiff Bobby Joe Golden by and through his Attorney of record, Melvin G. Cooper, Esq., and files this his Memorandum of Authorities in Opposition of Defendants' Motion for Qualified Immunity and Summary Judgment and would show unto this Honorable Court the following, to-wit:

### FACTUAL BACKGROUND

On or about February 26, 2005 at 1:13 A.M., the plaintiff Bobby J. Golden was arrested for the charge of Domestic Violence at 2207 31st Street, Gulfport, Mississippi. It is undisputed that plaintiff Bobby J. Golden, kicked in the back sliding glass door to Nida Michelle Cnales' residence, who apparently were intimate involved with plaintiff. Also, it is undisputed that a male, Earnest Earl

Phillips was at the residence when Golden kicked the sliding glass, and entered the aforementioned residence and fought with Earnest Phillips, who was present in Nida Cnales' bedroom.

Gulfport police was called to the residence by Nida Cnales and plaintiff Golden was subsequently arrested. According to the Gulfport Police Department Narrative Report, when the officers arrived at the referenced residence, plaintiff Golden was lying face down on the floor in the den bleeding from the mouth. According to the officer's report, several cuts on plaintiff Golden's face and neck were observed. (See Ex. "Pl"). Plaintiff Golden dispute Defendants' allegation that plaintiff was resistive and belligerent toward the arresting officers. Pursuant to Gulfport Police Narrative Report, plaintiff Golden was verbally abusive toward the officers not resistive. (See Ex. "Pl"). Immediately after being placed in the booking room at the Harrison County Adult Detention Center, plaintiff Golden was sprayed with OC and was punched in the eye by an unknown Harrison County jailer (See Video Surveillance Ex. "P2"), which the video surveillance does not depict as averred in Defendants' Memorandum of Authorities in Support for Summary Judgment. Later in the day on the 26th of February 2005, the defendant Deputy Lee Otis Jackson prompted or caused several juvenile detainees to beat plaintiff Golden, by striking him on the head and kicking his body causing injuries to his head, back, ribs and chest.

On February 27, 2005, while incarcerated in an open area in the Harrison County Adult Detention Center an unknown deputy entered the area where plaintiff was placed and escorted plaintiff to Deputy Lee Otis Jackson. Deputy Jackson took plaintiff Golden to an outside area, later identified as the recreation yard and physically abused plaintiff Golden by striking him on his head and body. As a result of the beating by Deputy Jackson, plaintiff Golden fell to the ground and Deputy Jackson began kicking plaintiff's body, aggravating his bruised ribs, which were originally injured from the beating by the juvenile detainees. Lee Otis Jackson is the father of Nida Michelle Cnales three (3) children, who plaintiff assaulted on the morning of the 26th of February, 2005. Subsequently to the assaulting of plaintiff Golden, he was treated by a physician at the Harrison County Adult Detention

2

Center, who noted in the medical report that Golden was involved in an altercation with police. The physician's notation acknowledged that plaintiff Golden was treated for an injury above his right eyebrow. (See Ex. "P3"). Plaintiff Golden will show that the Defendants acted in their individual and official capacities in depriving plaintiff of his constitutional rights and Defendants are not entitled to qualified immunity and summary judgment.

## LEGAL ANALYSIS

**A.    Standard of Review**

A party opposing Motion for Summary Judgment is to be given benefit of all reasonable doubt in determining whether a genuine issue exists. Aulds v. Foster, 484 F.2d 945. That it may be surmised that party against whom motion for summary judgment is made is unlikely to prevail at trial is not sufficient to authorize summary judgment against him. Aulds v. Foster Supra. A Motion for Summary Judgment should only be granted when there is no genuine issue as to any material fact. Public Housing Administration, 238 F.2d 689, 696 (5th Cir. 1956). As a matter of policy federal courts are reluctant to interfere with internal prison discipline, however, "this chariness does not mean that prison officials have unfettered discretion in the treatment of their prisoners." Anderson v. Nosser, 438 F.2d 183, 189 (5th Cir. 1971). An unjustified brutal beating by prison guards is sufficient to state a claim under 42 U.S.C. Section 1983, Haines v. Kerner, 404 U.S. 519. The Court held "we do not make the slightest intimation that such misconduct can be proven at trial. All we hold is that the existence of genuine issues of material fact make summary judgment inappropriate. The burden of showing that no genuine issues of material fact exists is on the moving party (the defendants herein), and all doubts shall be resolved in favor of the non moving party (plaintiff), and reasonable inferences shall also be drawn in favor of that party. *Huskabay v. Moore*, 142 F.3d 233,238 (5th Cir. 1998).

   **B.** The Defendants, Harrison County, Payne, Gaston, Gaston-Riley, Taylor and Jackson are not entitled to Qualified Immunity. The question is whether a reasonable person would have believed his conduct was constitutional, in light of information available to him and clearly established law.

See Glenn v. City of Tyler, 242 F.3d, 307, 312 (5th Cir. 2001). Below is summary of what the U.S. Justice Department had to say about overcrowding and unsafe operations at the Harrison County Adult Detention Center in a letter dated July 20, 2005.

### Use of Force By Staff

> Substantially increased as a result of the serious strain (of) overcrowding with 3 of about 10 incidents involving use of chemical agents in December 2003 to 14 of 31 incidents involving use of chemical agents in December 2004.

### Misuse of Force

> According to reports filed since 1997, Justice noticed "only one misapplication of the use of force." However the latest visit revealed a very disturbing pattern of misuse of force. With regards to at least four incidents, we have serious concerns over the nature of the misuse of force, the lack of appropriate review of the incident and failure to properly investigate the incidents.

C. **DEFENDANT RICK GASTON**

Plaintiff alleges that Rick Gaston knew, or reasonably should have known, prior to the attack on plaintiff, that such activity regularly took place at the Harrison County Adult Detention Center. Indictments alleges Ryan Teel and Rick Gaston of assaulting inmate "M.A." on August 9, 2005 and on October 10, 2003 and alleges that Rick Gaston assaulted an inmate described as "T.O." Further, Rick Gaston and Co-conspirators allegedly assaulted inmate "A.H." at the jail on February 8, 2005 and failed to write a report about the incident.

The incident also accuses Gaston of bragging about the cover-up. See article that appeared in the Sun Herald marked as Exhibit No.4 and Quarterly Incident Report. Ironically, the Quarterly Incident Report did not list a single incident between inmate and jailer for the month of February, 2005. The United States Justice Department summarily in a letter dated July 20, 2005, inmate disciplinary infractions soared from about 20 per 100 inmates in December 2003 to about 75 infractions per 100 inmates by December 2004.

The use of force by staff substantially increased as a result of the serious strain of overcrowding with 3 of 10 incidents involving use of chemical agents in December 2003 to 14 of 31 incidents

involving use of chemical agents in December 2004. Further, the Justice Department revealed a very disturbing pattern of misuse of force with regards to four incidents that commenced in 2004. Justice stated that it has serious concerns over the nature of the misuse of force, the lack of appropriate review of the incidents and failure to properly investigate the incidents.

Thomas Preston Wills, who pleaded guilty to conspiring to deprive Harrison County Jail inmates of their civil rights, worked at the jail booking room from November 2002 until April 6, 2006, participated in more than 100 assaults, observed 100 or more other inmate assaults and heard co-workers brag about their actions. Rick Gaston ran the Harrison County Jail booking room with disregard for jail policies and encouraged others to "needlessly" assault inmates according to federal indictment. Testimony from the State of Alabama law enforcement personnel revealed that Rick Gaston personally attacked an inmate, who was being moved from his authority in the back of their transport vehicle.

**D.**                                **DEFENDANT HARRISON COUNTY**

Harrison County's Joinder in the Motion for Qualified Immunity and Summary Judgment Defendants, George Payne, Dianne Gaston-Riley, Phil Taylor and Lee Otis Jackson does not set out sufficient defenses. Harrison County Board of Supervisors is the funding institution for the Harrison County Jail. Based on the number of inmate assaults that occurred at the Harrison County Adult Detention Center (HCADC), the Board of Supervisors continued to finance the Sheriff's operation at the jail.

A constitutional violation must occur pursuant to an official custom or policy in order for municipal liability to exist. It is undisputed a constitutional violation occurred when an unknown jailer struck plaintiff in the booking room at the jail and sprayed OC in plaintiff's face. Further, it is undisputed that Deputy Lee Otis Jackson caused juvenile detainees to beat plaintiff and he personally physically abused plaintiff.

Harrison County and Harrison County Sheriff's Department official policies were the moving force behind the alleged violation. Sworn statements of former Harrison County deputies who entered a plea of guilty of conspiring to violate inmate's constitutional rights by physically abusing more than 100 inmates and observing other deputies abusing more than 100 inmates, clearly demonstrates a pattern of similar incidents. Harrison County and Harrison County Jail officials created a policy, custom and practice among the jailers that created the deprivation of inmate's constitutional rights.

Plaintiff Golden has established the existence of three (3) elements to make a claim for section 1983 government liability: (1) the existence of a policy maker; (2) the existence of an official policy; and (3) the violation of constitutional rights whose "moving force" is the policy or custom. See *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001). Proof of a single violent incident ordinarily is insufficient to hold a government liable for inadequate training or supervision.

However, this is not the issue in the instant case. A persistent, widespread of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. *Johnson v. Moore*, 958 F.2d 92. In *Brown v. Bryan County, OK*. A final decision marker's adoption of a course of action tailored to a particular situation and not intended to control decisions in later situations may, in some circumstances, give rise to municipal liability under Section 1983. 42 U.S.C.A. Section 1983.

The Defendants Payne, Gaston-Riley and Taylor ran the Harrison County Jail with disregard for jail policies and encouraged others to needlessly assault inmates, according to a federal indictment. Title 42 U.S.C. Section 1983 provides, in relevant part, that: "Every person who, under color of any statue, ordinance, regulation, custom, or usage …subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges,

6

or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. City of Canton v. Harris, 489 U.S. 378.

In Webster v. City of Houston, 735 F.2d 838, the Court of appeals held the trial Court erred in refusing to allow plaintiffs, who sought recovery for fatal injury sustained by arrestee, to attempt to prove other similar incident of the use and toleration of excessive force by city policy markers in meeting the burden of showing that custom asserted was "persistent", widespread, and commons. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Webster v. Houston Supra. It was published in the Sun-Herald in an article dated Tuesday March 27, 2007, "Jail rules were ignored", beating, false reports, cover-ups were acceptable. See article, marked as plaintiff's ("Exhibit No. 4.") According to Deputy Dedri Yulon Caldwell, the conspiracy began before April 23, 2001, who, plead guilty to the charge of conspiracy. Further, Caldwell stated she participated in more than 100 inmate assaults and observed Co-conspirators assaulted more than 100 inmates. See Sun-Herald article, dated December 7, 2006, marked as plaintiff's ("Exhibit No. 5.") Sun-Herald articles, collectively, marked as plaintiff's ("Exhibit No. 6.")

It is difficult to surmise that the Defendants, Harrison County, Payne, Gaston-Riley and Taylor did not have actual knowledge of the number of inmates that were unjustifiably abused under their watch. Because of the practice and custom of assaulting inmates at the Harrison County Adult Detention Center, Lee Otis Jackson felt that he would not be disciplined by Defendants Payne, Gaston-Riley and Taylor if he assault plaintiff Golden. A police officer is to provide a higher degree of care for the safety and protection of intoxicated prisoners than for prisoners in control of their physical and mental faculties.

There was no altercation between plaintiff Golden and the transporting officer to the Harrison County Jail. Immediately, upon arriving at the Harrison County Jail, Golden was struck in the right eye by an unknown Harrison County deputy and sprayed with OC spray. Subsequently, plaintiff

7

Golden was assaulted by juvenile detainees, who were clearly prompted by Defendant Lee Otis Jackson for extra trays of food.

### E.     DEFENDANTS PAYNE, GASTON, GASTON-RILEY, TAYLOR AND JACKSON

Defendants asserted in Memorandum of Authorities in Support of Motion for Qualified Immunity and Summary Judgment, I quote, "A state jail official cannot be liable for episodic or omissions unless that official had subjective knowledge of the substantial risk of serious harm to an inmate but responded with deliberate indifference to that risk". Former Preston Wills worked at the Harrison County Jail booking room from November 2002 until April 6, 2005. Former Deputy Wills averred he participated in more than 100 assaults and observed 100 or more other inmate's assaults and heard Co-workers brag about their actions. According to the United States Department of Justice, the conspiracy violate inmates' constitutional rights begin before April 23, 2001. Likewise, former Deputy Dedri Yulon Caldwell stated that she participated in more than 100 inmates assaults and observed Co-conspirators assaults more than 100 inmates. Based upon the number of assaults against inmates at the jail, Defendants Payne, Gaston-Riley and Taylor knew that inmates were being deprived of their constitutional rights. To overcome qualified immunity, former prisoner had to show that police officer (1) violated a constitutional right that (2) was clearly established at the time of the violation (3) through conduct that was objectively unreasonable. U.S. v. Mowbroy, 274 F.3d 269.

Proof or more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before lack of training or supervision constitutes deliberate indifference. Snyder v. Trepagncer, 142 F.3d 791,798-99 (5th Cir. 1998). The plaintiff must generally demonstrate at least a pattern of similar violation Snyder Supra. Standing alone, an expert's opinion is generally not enough to establish deliberate indifference. Snyder Supra.

Also, former Deputy Morgan Lee Thompson admitted under OATH "that he assaulted more than 100 inmates at the Harrison County Jail and observed Co-conspirators in hundred of additional

assaults on jail inmates." Plaintiff Golden has satisfied his burden to allege, at a high level of generality, a constitutional violation. It remains whether defendants' acts were objectively reasonable in light of clear establish law. Behavior that does constitute deliberate indifference is relevant in assessing the scope of clear established law and, therefore, is relevant in determining whether the defendants' actions were objectively reasonable. The defendants moved for summary judgment based on qualified immunity, plaintiff has met his burden demonstrating that all reasonable officials similarly situated should have then known that the alleged acts of the defendants violated the United States Constitution.

Plaintiff Golden was assaulted on February 26, 2005 by an unknown deputy in the Harrison County booking room and later on the same date by juveniles detainees, who were give an extra tray of food to assault plaintiff Golden. On the 27th of February 2005, plaintiff Golden was taken from his cell by a deputy and delivered to Deputy Lee Otis Jackson. Deputy Lee Otis Jackson took plaintiff Golden on the outside of the Harrison County Jail and punched and kicked plaintiff, until he fell to the ground. The mandated quarterly report required by Harrison County Jail to file with the Department of Justice, listed no assault or altercation between inmate and jailer for the month of February, 2005. This report was prepared by Defendant Taylor. ("See PL Ex No. 7.") Deputy Lee Jackson denied that he caused the juveniles to beat plaintiff Golden. However, Deputy Jackson allegation is contrary to FTO Shayne Carson, who informed Defendant Taylor that he received information that several inmates were given extra food trays by an officer as payment for assaulting an inmate. See Harrison County Sheriff Narrative Form, ("PL Ex. No. 8.") Inmate Jerrod Lee Doc stated that inmates (juveniles) were paid extra food trays to assault Golden and he over heard officers talking about Golden's beating, because Jackson mentioned that Golden beat his babies momma. See Harrison County Narrative report, marked as ("Ex. No. 9.") Deputy Marble stated, he observed Defendant Jackson giving juvenile inmate Kennedy an extra food tray. See Harrison County Sheriff's Department Professional Standards Unit, marked as ("Ex. No. 10.") See Plaintiff Golden's Affidavit, marked as ("Ex. No. 11.")

Defendants assert in their Motion for Summary Judgment. The official in question "must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw from the inference". Based upon the sworn statements of former deputies, who plead guilty to conspiracy to violating inmates' constitutional rights, who participated in 100 assaulting of inmates and witnessed 100 similar beatings by deputies, suffice that the defendants were aware of facts from which the inference could have been drawn that a substantial risk of serious harm exist.

Defendants cited <u>Snyder v. Trepagnier</u>, 142 F.3d 791, 798-99 (5th Cir. 1998). Ordinarily, proof of a single incident, rather than a pattern of serious similar violations, is insufficient to sustain a claim that lack of training or supervision caused a constitutional violation. Pursuant to the Harrison County Adult Detention Training for Correctional Officers Manual, which is marked as plaintiff ("Ex. No. 12.") On page 2 of the referenced manual, paragraph I, states All new Correctional officers will receive a minimum of 40 hours of training/orientation prior to being assigned to a particular job.

Defendant Lee O. Jackson training file does not reflect that he received forty (40) hours of training/orientation prior to assignment of his job. Further, the training manual states on page 2 paragraph k that correctional officers, in addition to the 40 hours orientation training, will receive 80 hours of basic correctional training. Again, Defendant Jackson training file reflects that he did not satisfy paragraph k of the Correctional Manual. In fact, it appears that Defendant Jackson only was exposed to in-service training. See ("PL Ex. No. 13.") The only training regarding the use of force was administered to Defendant Jackson was on September 29, 2004 for a period of 15 minutes. The Chain of Command at the Harrison County Adult Detention Center is the Sheriff, Major, Captain, Lieutenant, Sergeant, Field Training Officer, Correctional Officer and Correctional Officer Trainee. Pursuant to Harrison County Jail Policy and Procedure Directive, a Monthly Statistical Reporting shall be filed to the Sheriff by the 10th of each month. See Monthly Statistical Reporting form marked as ("PL Ex. No. 7.") It states that department heads will submit documentation to the Services and Security Captains. The Security and Services Captain will gather all information from the reports on

the first day of each month and ensure that all information required has been submitted. It is ironic that Captain Taylor interviewed Golden regarding the beating he sustained by the juvenile detainees and Defendant Jackson, and he failed to ensure that the Monthly Statistical Reporting was complete and accurate to

inmate discipline and/or incidents. After the information is completed by the Security and Services Captain, it is forwarded to the Harrison County Administrator, which was Defendant Gaston-Riley at the time of Golden's beating.

It is undisputed that Deputy Jackson's actions toward plaintiff Golden was investigated and subsequently he was terminated on March 16, 2005. Also, it is undisputed that the named Defendants with the exception of Defendant Jackson were not present when the unknown jailer struck and sprayed OC spray on plaintiff Golden the subsequent beating of Golden by the juvenile detainees and Defendant Jackson. However, expedited termination of Jackson and the absence of present during the beating of plaintiff Golden, does not exclude their liability, because of the number of inmates assaults occurred prior to Golden's beating, demonstrated a pattern of violations and that the inadequacy of training is obvious and obviously likely to result in a constitutional violation which satisfy the deliberate indifference standard. Deliberate indifference in the context of section 1983 entails a greater level of culpability than more negligence, which is not the case regarding the instant subject matter lawsuit.

Sheriff not personally involved in acts that deprived plaintiff of her constitutional rights is liable under 1983 if (1) sheriff failed to train or supervise the officer involved (2) there is a casual connection between the alleged failure to supervise or train and the alleged violation of plaintiff's rights, and (3) the failure to train or supervise constituted deliberate indifference to plaintiff's constitutional rights. Whiting v. Tunica County, 222 F.Supp.2d 809 (2002). Plaintiff Golden asserts that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Supervisory liability exists even without overt personal participation in the offensive act

11

if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force of the constitutional violation. Defendants, Harrison County, Payne, Gaston-Riley and Taylor conduct of deliberate indifference suffice a causal connection between the supervisor's wrongful conduct and constitutional violation.

In <u>Webster v. City of Houston</u>, 735 F.2d 838 defined an official policy and custom as:

(1) a policy, statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipalities lawmaking officers, or by and official to whom the lawmakers have delegated policymaking authority; or

(2) a persistent widespread practice of city officials or employees, which, although not authorized by officials adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such policy must be attributable to the governing body of the municipality or to an official to who that body has delegated policymaking authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

<u>Webster v. Houston</u>, 735 F.2d 838, 841 (5th Cir. 1984). The court identified the standard to be applied in these cases and held:

> …Under our standard this case turns on whether the City maintained a practice of allowing the use of excessive police force that was "a Persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employee …

<u>Id</u>. at 842. As stated in <u>Bennett v. Slidell</u>, 728 F.2d 762, 768 (5th Cir. 1984), in describing "custom or usage" the Supreme Court has used such phrases as "persistent and widespread ..practices," "systematical administration" of laws, practices that are "permanent and well settled," and "deeply embedded traditional ways of carrying out ..policy". The Court further stated that "in the context of the question of city liability for such persistent conduct of its employees, i.e., conduct that has become a traditional way of carrying out policy as required the force of law, the persistent conduct must be attributable to the source of policy or law of the city, its governing body.

12

Former Deputy Thomas Preston Wills, who worked in the jail booking room from November 2002 until April 6, 2006 stated during his plea proceeding that he previously worked at casino resorts in room service and as a bellman.  He stated under oath to a U.S. District Judge that he received just one week of corrections training at the jail and three days with a field training officer and intermittent courses during his employment.  Former jailer Dedri Yulon Caldwell stated during her plea proceeding that she conspired with others to use unnecessary and unreasonable force and she has a drug problem.  Former Deputy Caldwell admitted to a U.S. Magistrate Judge that she used marijuana and cocaine.  And she has smoked marijuana for 10 years.  Other former Deputies at the jail gave statement under OATH that they have assaulted more than 100 inmates and observed other Deputies assault 100 or more inmates in similar cases.

The above described actions and omissions meet the definition of an "official" policy and custom.  Actual or constructive knowledge of such policy must be attributable to the governing body of the municipality or to an official to whom that body has delegated policymaking authority.  The Harrison County Jail policy was persistent, widespread practice, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

Defendants averred in their Motion for Summary Judgment that punitive damages are not allowed against a municipality under 42 U.S.C. 1983.  In an inmate's section 1983 claim against a sheriff acting in his official capacity, punitive damages may not be recovered.  In Baltezore v. Concordia, 767 F.2d 202 (5th Cir. 1985).  The Court stated that it is well settled that punitive damages may be awarded in a Section 1983 action even without a showing of actual loss by the plaintiff if the plaintiff's constitutional rights have been violated.  McCulloch v. Glasgow, 620 F.2d 47, 51 (5th Cir. 1980); accord Dykes v. Hosemann, 743 F.2d 1488, 1500 (11th Cir. 1984).  See also Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 1639; quoting Carlson v. Green, 446 U.S. 14, 22 "Punitive damages may

be the only significant remedy available in some Section 1983 actions, where constitutional rights are maliciously violated but the victim cannot prove compensable injury".

## CONCLUSION

In summary, plaintiff Golden has met his burden that Defendants, Harrison County, Payne, Gaston-Riley, Taylor, Gaston and Jackson have violated his constitutional rights. Plaintiff has shown that a persistent widespread practice of Harrison County Adult Detention officials and employees of assaulting inmates and the conduct was attributable to the source of policy or law of the Harrison County Jail officials and its governing body. Plaintiff Golden suffered a constitutional violation due to a policy, custom and practice of Harrison County and the Sheriff's office, all Defendants acting in the official capacity. **WHEREFORE, PREMISES CONSIDERED**, plaintiff Golden requests the Honorable Court to deny Defendants Motion for Summary or Partial Summary Judgment.

**RESPECTFULLY SUBMITTED,** the 5th day of August, 2008.

                                                  BOBBY J. GOLDEN
                                                  PLAINTIFF


                              By:    s/*Melvin G. Cooper*
                                      MELVIN G. COOPER
                                      HIS ATTORNEY

Melvin G. Cooper
178 Main Street, Suite 104
Biloxi, MS 39530
Phone: 228-435-4529
Fax: 228-435-2529
Bar No.: 8352

## CERTIFICATE OF SERVICE

I, hereby certify that on this the 5th day of August 2008, I electronically filed the foregoing Memorandum of Authorities in Opposition of Motion for Qualified Immunity and Summary Judgment on Behalf of Defendants, Sheriff George Payne, Dianne Gaston-Riley, Phil Taylor, and Lee Otis Jackson Officially and in Their Individual Capacities with the Clerk of the Court using the ECF system which sent notification of such filing to the following parties:

> Cy Faneca, Esq.
> Dukes, Dukes, Keating and Faneca, P.A.
> P.O. Drawer W
> Gulfport, MS 39502
>
> Ian Brendel, Esq.
> 1904 24th Avenue
> Gulfport, MS 39501
>
> Jim Davis, Esq.
> 1904 24th Avenue
> Gulfport, MS 39501
>
>
> Karen J. Young, Esq.
> Meadow Law Firm
> P. O. Box 1076
> Gulfport, MS 39502

**SO CERTIFIED**, this the 5th day of August, 2008.

> s/*Melvin G. Cooper*
> MELVIN G. COOPER